UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No.: 19-041-Cr- SCB-JSS-1

v.

SOCRATES BARROS FINCE,
        Defendant.
_____/

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

NOW COMES the defendant, Socrates Barros Fince, by and through undersigned counsel and respectfully submits this Memorandum in Aid of Sentencing. Mr. Barros Fince respectfully asks the Court for sentence mitigation based on his impoverished life, his lack of criminal history, his conditions of confinement, and other factors that may be discussed at the scheduled sentencing hearing. He asks the Court to impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes. 18 U.S.C. § 3553(a).

*Background*

Mr. Barros Fince was charged in a two-count indictment, charging a conspiracy to import more than five kilograms of cocaine into the United States. DE 1. He was arrested in Colombia on September 9, 2020, and detained there as a result of a provisional arrest warrant issued by the United States in the case before this Court. PSR, p.7¶21. After his arrest in Colombia, he was released by a Colombian judicial

officer on December 5, 2020. Thereafter, he was arrested again[1] and remained detained in a Colombian jail until he was extradited to the Middle District of Florida in April of 2022. DE 33. Mr. Barros Fince entered his plea of guilty in March of 2023 pursuant to a cooperation plea agreement with the government. This Court subsequently accepted his plea and, after delaying sentencing so he may continue his cooperation, he is now scheduled for sentencing on Thursday, November 9, 2023. DE 167.

On the day of sentencing, Mr. Barros Fince will have served more than 34 months of incarceration: September 9, 2020, to December 5, 2020, then March 28, 2021 to November 9, 2023. He was detained in Colombia for his illegal conduct, and as a direct result of the case before this Court. While Mr. Barros Fince has served more than 34 months of incarceration, if the Court were to consider credit for good-time served, per Bureau of Prisons' (BOP) "good-time credit," he has served the approximate equivalent of a 38-month sentence.

*Pre-Sentence Investigation/Report & Sentencing Guidelines*

Mr. Barros Fince finds no errors and does not object to the findings and conclusions in the "Presentence Report Investigation" (PSR). DE 169. However, the

---

[1] The initial arrest of Mr. Barros Fince in Colombia was based upon the provisional arrest warrant issued by the United States as a result of the indictment lodged against him. On December 5, 2020, a Colombian magistrate released Mr. Barros Fince pending his extradition. This release was then revoked, and he was arrested and detained again on March 28, 2021.

following comments/arguments on the guidelines are offered below for the Court's consideration.

The Court is aware that recent amendments to the U.S. Sentencing Guidelines have designated a two-level guideline reduction for offenders with no criminal history. The newly enacted "Zero-Point Offender" provision found at Guideline § 4C1.1(a)(1)-(10) and (b) recognizes a continuing trend in sentence recommendation; specifically, a trend focusing on alternatives to incarceration. Unfortunately, the amended "zero-point" guideline excludes defendants that received a role enhancement, such as Mr. Barros Fince. However, it is clear that serious consideration is being given to guideline changes that address those defendants with no criminal history and whether incarceration is the best option.

Notably, 28 U.S.C. § 994(j) requires the U.S. Sentencing Commission to ensure that certain persons who commit non-serious offenses generally receive non-custodial sentences. Furthermore, the Commission is obligated, pursuant to § 994(g) to "minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons."[2] These obligations call for, and with the newly enacted "Zero-Point Offender" provision, have resulted in lower sentencing ranges and

---

[2] See U.S. Dept. of Justice, *FY 2022 Performance Budget: Congressional Submission Federal Prison System Buildings and Facilities* 1–2 (2022), https://www.justice.gov/jmd/page/file/1398296/download ("Although the inmate population has been declining in recent years, as of March 25, 2021, there were 152,097 individuals serving time in federal prisons. . . .The BOP faces challenges in managing the existing federal inmate population and providing for inmates' care and safety in crowded conditions at higher security levels, as well as the safety of BOP staff and surrounding communities, within budgeted levels.").

consideration of alternatives to incarceration.  Mr. Barros Fince asks the Court for such consideration.

Comments to this year's Guideline amendments arguably highlight a *presumption* of non-incarceration, or reduced incarceration, for persons who are "first offenders who ha[ve] not been convicted of a crime of violence or otherwise serious offense."[3] Mr. Barros Fince respectfully asks the Court to recognize this trend and begin the sentencing analysis with a presumption against incarceration for individuals with no criminal history, such as himself.  PSR, p.10¶41-45  Such an approach would better respect § 994(j), promote the purposes of sentencing, and reflect "advancements of knowledge of human behavior," as required by 28 U.S.C. § 991(b)(1), from the Commission's own recidivism studies.

It is further noted that the U.S. Probation Officer found no act by Mr. Barros Fince to obstruct nor impede justice.  PSR, p.8¶27.

*Defendant's Childhood & La Guajira State of Colombia*

Mr. Barros Fince faced extreme poverty as well as political unrest in his country as he grew up with his family.  He recalls that his childhood home was a mud hut. PSR, p.10-11¶49.  He was left father-less at the age of eight. PSR, p.10¶49. His rock was his aunt, Rosa Fince Uriana, and her general store that gave him a chance to earn money for the family.  PSR, p.11¶49.  This ended in 2004 when a massacre

---

[3] See 28 U.S.C. § 994(j). This presumption was proposed, but not adopted in 2017. *Compare* 82 Fed. Reg. 40651-01, 40657, 2017 WL 3635792 (Aug. 25, 2017) (proposing that "the court ordinarily should impose a sentence other than a sentence of imprisonment" for a "first offender"), with U.S.S.G. § 5C1.1 cmt. n.4.

4

resulted in the killing of his aunt, and the displacement of his family to Venezuela. The massacre was part of an on-going struggle for survival by Mr. Barros Fince, and for his indigenous people, the "Wayuu," from the Guajira Department of Colombia.

The Wayuu people of Colombia make up the largest indigenous group in Colombia and are the second largest population of internally displaced people in the world, after Sudan. [https://www.pbs.org/video/women-war-and-peace-a-return-to-bahia-portete/](https://www.pbs.org/video/women-war-and-peace-a-return-to-bahia-portete/). They live in the Guajira Department on the northern coastline of Colombia with Venezuela and the Caribbean Sea as their boundaries. As a displaced indigenous people, they have struggled to maintain their identity and ensure recognition by the Colombian national government. Sadly, they have also endured the Colombian government's war with leftist guerillas and paramilitary forces. This "state of war" has had a direct and devastating impact on Mr. Barros Fince, and the people of the Guajira Department of Colombia.

As noted previously, in 2004, Mr. Barros Fince survived what is referred to as the "Bahia Portete Massacre." See [https://en.wikipedia.org/wiki/Bah%C3%ADa_Portete_massacre](https://en.wikipedia.org/wiki/Bah%C3%ADa_Portete_massacre). He was 25 years old at the time of the massacre. The paramilitary forces that committed the massacre, killed scores of Wayuu people, but a particular target was Mr. Barros Fince's family; specifically, an aunt, Rosa Fince Uriana, who was targeted because she was a community leader. Mr. Barros Fince's aunt was seized, viciously tortured, and murdered by the paramilitary forces. He and his remaining family had to flee their homeland or lose their lives.

Two exhibits are attached to this memorandum that explain the Wayuu people, their history, and that of Mr. Barros Fince. One exhibit, a document prepared by Mr. Barros Fince's sister, Telemina Barros, describes the Wayuu people, their struggle, and the impact of the massacre on Mr. Barros Fince and his family. The other exhibit is a government document verifying Mr. Barros Fince's status as a victim of the massacre. The documents are in Spanish but have been translated into English for the Court's review.

The document produced by Mr. Barros Fince's sister, goes into detail, and provides the Court insight into the world that shaped him and his family. While drug-trafficking cases before this Court are usually boiled down to economic circumstances and potential gain, this document details why the economic lure of drug trafficking became a tragic answer to Mr. Barros Fince's life. The following portion of the writing is presented for emphasis:

> For the specific case regarding the defendant (Mr. Barros Fince), it cannot be ignored that everything previously narrated, regarding the context, especially the effects caused when he was still a young man, *influenced the formation and conception as initially the survival instinct, due because he was stolen from his ancestral territory, even leading to relationships with people who ended up manipulating and conditioning his actions.* [Emphasis added] One must then keep in mind both the especially cultural conditions of belonging to the Wayuu indigenous people, but also the recognition as a victim of the armed conflict that ended up marking the actions deployed in recent years, in order to cope with the absence of their loved ones, trying to reconstruct the individual, family and community life plan.
>
> As the sister of Sócrates Barros Fince, I state that our lives have been marked by the crude armed conflict that we experienced in Colombia

and that marked our lives and that our worldview was affected, we apologize for his actions.

Exhibit, *Wayuu People & Socrates Barros - English Translation*.

Today, Mr. Barros Fince has three children ages 17, 14 and 12. PSR, p.11¶50. His primary desire is merely to return to Colombia, to the Guajira Department, and his family. His family has been supportive of Mr. Barros Fince throughout his struggles. As he has dealt with this criminal case, his family has continued this support. He is keenly aware that his criminal conduct has done a great harm to the U.S. and Colombia, but of more direct impact to him, it has harmed his family. By his mere absence, his family has had to support, feed, and continue the education of his children. Mr. Barros Fince wishes this to end, and for his prompt return home.

*Cooperation*

As noted previously in this memorandum, Mr. Barros Fince's sentence was delayed twice so he could continue his cooperation with U.S. prosecutors and law enforcement agents. DE 122 and 134. Furthermore, Mr. Barros Fince, as set forth in the PSR, has "clearly demonstrated acceptance of responsibility for the offense" and "has assisted authorities in the investigation or prosecution" of his own misconduct. PSR, p.9¶37 and p.9¶38.

*Substance Abuse & Treatment*

Mr. Barros Fince requests mitigation of sentence based upon his substance abuse and inability for the BOP to provide proper treatment since he is a deportable alien and not able to participate in drug treatment programs given his immigration

7

status. It is further noted that his sentence would necessarily be harsher than a similarly situated defendant who was a U.S. citizen.[4] Mr. Barros Fince began to abuse alcohol, marijuana, and cocaine at the early age of sixteen. PSR, p.12¶57. All the substances referenced were abused by Mr. Barros Fince: drinking to intoxication multiple times per week, regular use of cocaine, and "large" amounts of marijuana. *Id.* By his own admission to the U.S. Probation Officer, he was "an addict." *Id.* Substance abuse treatment/counselling is appropriate as part of the sentence so, as Mr. Barros Fince indicates, he can become a "normal, calm man." *Id.*

*Transitional Nature of Pre-Trial Detention*
*Sentence Disparity - COVID-19 - § 3553(a)(6)*

Mr. Barros Fince further asks the Court to consider sentence mitigation related to his extended period of detention at a maximum-security wing of the Pinellas County Jail. As noted above, Mr. Barros Fince was extradited to the United States in April of 2020. From his arrival until shortly after he entered his plea of guilty, he was at the Pinellas Jail, in a maximum-security section of the jail. The

---

[4] Sentence mitigation is requested because regardless of whatever sentence the Court imposes, Mr. Barros Fince's sentence will be harsher than an identical sentence given to a defendant that is a U.S. citizen. This disparity in sentencing has been identified by the D.C. Circuit which held that a downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause fortuitous increase in the severity of confinement. *United States v. Smith*, 27 F.3d 649, (307 U.S. App. D.C. 1994). A 10-year sentence for Mr. Barros Fince will necessarily be more sever than a 10-year sentence for "John Doe," a U.S. citizen who can take advantage of substance abuse programs, and end-of-sentence re-entry options such as half-way house placement – to name a few of the options.

detention at this particular wing of the jail was harsher than similarly situated pre-trial detainees.

In addition, given the high-security status of the jail-wing described above, lock-downs and isolation of inmates within cells were the norm when health concerns, such as COVID restrictions, or security measures, were employed. At times it was the norm for Mr. Barros Fince to be in a cell for 23-hours of a day. The conditions which Mr. Barros Fince endured were above and beyond the norm. He respectfully asks the Court to consider the circumstances described above and mitigate his sentence so as to avoid unwarranted sentence disparity.

While analysis of conduct, charges, and sentencing are the norm when evaluating sentence disparity under § 3553(a)(6), courts are not restrained as to the source or kind of information they may consider in sentencing a defendant so long as that information bears upon determining the proper sentence. *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989); *see also* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. Judges may account for "sentence disparities when devising a punishment for a particular offender." *Id.* See also *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) ("Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities—along with other § 3553(a) factors—when imposing sentences. See *Gall*, ante, at 50, n. 6, 54.").

The nature of a jail facility and rehabilitation of a defendant is "highly relevant to several of the § 3553(a) factors." See *Pepper v. United States,* 562 U.S. 476, 491 (2011). Transitional detention facilities such as the Pinellas County Jail fail in

9

comparison to Bureau of Prison facilities. Transitional facilities simply lack the robust rehabilitative programs of the BOP, they do not have the continued medical care of the BOP, they also lack the drug treatment and rehabilitation programs that are now thriving in BOP facilities.

Beyond the maximum-security component of the detention Mr. Barros Fince endured, he also faced another structural factor that would warrant sentence mitigation, that is the transitional nature of the Pinellas County Jail. Courts have mitigated sentences based upon a defendant's extended time at a transitional facility. *United States v. Tovar Pupo*, 04-cr-00114 (RBW)(D.C. D.Ct.).[5]

*Waiver of Fine & Impoverished Life*

Mr. Barros Fince respectfully requests that the Court waive imposition of a fine as he would be unable to pay the fine. PSR, p.12 ¶62. See also, PSR "Financial Condition," p.86-91 ¶91. He further notes that his impoverished life warrants sentence mitigation. PSR, p.14¶80.

---

[5] Sentencing Hearing - Nov. 6, 2015, Transcript p.92:2-9 and p.93:10-15 (ECF 536) (U.S. District Judge Reggie B. Walton concluded: "And I do appreciate that the quality of life for someone who is serving a sentence in a local jail is a lot harsher and a lot more difficult than the time that one spends if they are actually serving a sentence at a federal institution. And I think that it is entitled to some consideration because of the hardship that individuals endure when they are detained in a local detention facility. But as I say you have spent a significant amount of time in a local facility, and in my view, that's entitled to some consideration and therefore, I will reduce further the amount of time that you have to serve by 36 months which reduces your sentence to 198 months which I think is an appropriate sentence in this case.").

*Bureau of Prisons Designation Recommendation*

Mr. Barros Fince respectfully requests that the Court consider the possibility that his family could visit while he is serving his sentence and that the Court recommend to the Bureau of Prisons placement at a facility in the BOP Southeast Region of the United States.

CONCLUSION

Mr. Barros Fince respectfully asks the Court for sentence mitigation based on his minor role in the offense, his impoverished life, his lack of criminal history, his conditions of confinement, and other factors discussed in this memorandum, and that may be discussed at the scheduled sentencing hearing. 18 U.S.C. § 3553(a).

Filed: November 5, 2023.

                                           Respectfully submitted,
                                           RETURETA & WASSEM, P.L.L.C.
                                           Defense Counsel for Defendant

                                           _____
                                           Manuel J. Retureta, Esq.
                                           District of Columbia Bar #430006
                                           300 New Jersey Avenue, NW, Ste. 900
                                           Washington, D.C. 20001
                                           202-450-6119 Office
                                           202-347-0130 Fax
                                           MJR@RETURETAWASSEM.COM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was served by ECF, on this 5th day of November 2023, on all counsel or parties of record on the service list.

_____
Manuel J. Retureta, Esq.