IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal Docket |
| ) | |
| SOCRATES GABRIEL BARROS-FINCE, ) | No. 8:19-cr-41-SCB-JSS-01 |
| ) | |
| Defendant. ) | |
| _____ ) | |

Transcript of Sentencing

Heard in Courtroom 11A
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Thursday - November 9, 2023
9:44 a.m. - 10:10 a.m.

BEFORE THE HONORABLE SUSAN C. BUCKLEW

UNITED STATES DISTRICT JUDGE

REBECCA M. SABO, RMR, CRR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Chamber 15A
Tampa, Florida 33602
Rebecca_Sabo@flmd.uscourts.gov
(406) 855-6410

Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATES OF AMERICA:

    **Daniel Michael Baeza**
    Assistant U.S. Attorney
    OFFICE OF THE U.S. ATTORNEY
    400 North Tampa Street, Suite 3200
    Tampa, Florida 33602
    (813) 274-6000
    daniel.baeza@usdoj.gov


PRESENT ON BEHALF OF THE DEFENDANT,
SOCRATES GABRIEL BARROS-FINCE:

    **Manuel J. Retureta**
    RETURETA & WASSEM, PLLC
    300 New Jersey Avenue NW, Suite 900
    Washington, DC 20001
    (202) 450-6119
    mjr@returetawassem.com


Also Present:  **Deanna Lorenz**, United States Probation Officer

              Xavier Keogh, Spanish Interpreter

|  |  |
|---|---|
| 1 | PROCEEDINGS |
| 2 | (Open court.) |
| 3 | (Defendant present.) |
| 4 | (Court called to order.) |
| 09:44:02AM 5 | (Oath administered to Xavier Keogh, Spanish Interpreter.) |
| 09:44:02AM 6 | THE COURT: All right. Mr. Barros-Fince, I'm going |
| 09:44:07AM 7 | to ask if you will stand, sir, and I'm going to have the |
| 09:44:09AM 8 | courtroom deputy swear you in. |
| 09:44:13AM 9 | COURTROOM DEPUTY CLERK: Sir, can you raise your |
| 09:44:15AM 10 | right hand. |
| 09:44:15AM 11 | SOCRATES GABRIEL BARROS-FINCE, |
| 09:44:15AM 12 | after having been first duly sworn to testify the truth, the |
| 09:44:23AM 13 | whole truth, and nothing but the truth, testified as follows: |
| 09:44:23AM 14 | COURTROOM DEPUTY CLERK: Please state your name for |
| 09:44:26AM 15 | the record. |
| 09:44:31AM 16 | THE INTERPRETER: Socrates Gabriel Barros-Fince. |
| 09:44:33AM 17 | COURTROOM DEPUTY CLERK: Thank you. |
| 09:44:33AM 18 | THE COURT: Mr. Barros-Fince, if you'll remain |
| 09:44:35AM 19 | standing. |
| 09:44:36AM 20 | In the last 24 hours, have you had any medicine of |
| 09:44:39AM 21 | any kind? |
| 09:44:41AM 22 | THE INTERPRETER: No. |
| 09:44:42AM 23 | THE COURT: Okay. I have a presentence report in |
| 09:44:46AM 24 | front of me that I have read through. It was prepared by the |
| 09:44:50AM 25 | probation officer. |

```
09:44:50AM   1              Have you been over this report with your attorney?
09:44:54AM   2              THE INTERPRETER:  Yes.  Of course.
09:44:56AM   3              THE COURT:  All right.  Do you need any more time to
09:44:58AM   4    speak with him before we start this morning?
09:45:01AM   5              THE INTERPRETER:  No.
09:45:02AM   6              THE COURT:  All right.  Thank you, sir.  You may have
09:45:06AM   7    a seat.
09:45:06AM   8              All right.  This is the third defendant in this
09:45:14AM   9    conspiracy that I will be sentencing.  And as I said before, I
09:45:19AM  10    sentenced Mr. Hinojosa-Larrada to 188 months, and I just
09:45:24AM  11    sentenced Mr. Diaz-Ramos to 87 months in the Bureau of Prisons.
09:45:31AM  12              The defendant entered a plea of guilty.  I read
09:45:38AM  13    through the plea agreement, even though I did not take the
09:45:40AM  14    plea, the magistrate judge did.
09:45:43AM  15              The presentence report that has been prepared, among
09:45:47AM  16    other things, does an advisory guideline calculation and has
09:45:53AM  17    suggested, under the advisory guidelines, that the total
09:45:56AM  18    offense level is a 38 and the base offense level is a 38 as
09:46:05AM  19    well, and that's driven by the amount of drugs.
09:46:08AM  20              The probation office has recommended a three-level
09:46:11AM  21    increase for Mr. Barros-Fince's involvement in this conspiracy,
09:46:19AM  22    three levels off for acceptance of responsibility, and that's
09:46:22AM  23    what brings it down to a total offense level of 38, criminal
09:46:27AM  24    history category of I.
09:46:27AM  25              According to the addendum, there are no objections by
```

```
09:46:31AM   1  the government to either the facts or the guideline
09:46:35AM   2  calculations.  Is that correct?
09:46:36AM   3           MR. BAEZA:  That is, Your Honor.
09:46:37AM   4           THE COURT:  All right.  And, Mr. Retureta, it says
09:46:40AM   5  the same thing as to the defendant.  Is that correct?
09:46:43AM   6           MR. RETURETA:  That is correct, Your Honor.
09:46:44AM   7           THE COURT:  Okay.  I have read the sentencing
09:46:48AM   8  memorandum, which was filed in this matter, and including the
09:46:55AM   9  attachment, which was very interesting about the Wayuu and the
09:47:02AM  10  Wayuu Massacre.  In fact, it caused me to even Google it and
09:47:11AM  11  look it up.
09:47:12AM  12           Mr. Baeza, have you filed anything on behalf of the
09:47:14AM  13  United States?
09:47:14AM  14           MR. BAEZA:  No, Your Honor.
09:47:15AM  15           THE COURT:  Okay.  All right.
09:47:19AM  16           Then, Mr. Retureta, I'll let you proceed as far as
09:47:22AM  17  sentencing is concerned.
09:47:23AM  18           MR. RETURETA:  Your Honor, we appreciate the Court
09:47:25AM  19  taking the time to review, as always, the presentation and
09:47:29AM  20  going the extra step forward.  It's a fascinating history that
09:47:34AM  21  Mr. Barros-Fince comes from, it's rich in tradition, and in
09:47:38AM  22  comparison to the previous defendant, Mr. Diaz-Ramos.  He is
09:47:43AM  23  Wayuu, and his family is Wayuu, and his family, who called me
09:47:47AM  24  this morning and have called throughout the representation,
09:47:53AM  25  live there still.
```

                In drawing a contrast with the previous defendant, Mr. Barros-Fince, his life changed at the ripe age of four or five years old when that massacre took place. He was not like Mr. Diaz-Ramos who was at about 20 years old when things started happening there. He lived there and he was officially displaced. He went from their land into Venezuela until his family was able to come back, again, tying to this conduct and why we are here today.

                He did not drive around in a Ferrari. He did not have the lap of luxury. He had quick, easy money that was spent on drugs, alcohol, and doing what they were doing again. And he is the first to admit it, and he admitted it fully and completely with the government, and he will continue to abide by his obligation and his desire to cooperate with the U.S. government. There will be a return for him here, and we hope that the Court will then recognize everything that he has done, but he has done an incredible amount to this point.

                So our request for the Court is, given what he has come from, again, that title "impoverished lifestyle," which I think is insufficient for, you know, what he has gone through, but given his background, given the decision he made to become involved in this, but then turning around and doing what he has done since then, that he should get some level of variance downward for his lifestyle, what was happening with him, couple that together with what was discussed previously about the

status of Pinellas Jail and just how he had to endure.

When I say endure, it's easy to say they came from a bad side of town. It's easy to say that they did not have money. This family was directly impacted because they were just uprooted. And I think the sister, Telemina, who is very active now in the rights of the Wayuu --

THE COURT: Is she the one that wrote --

MR. RETURETA: She wrote that, yeah.

It shows the multi-levels of trauma that they've gone through. And just beginning with the dirt beneath their feet is not theirs, let alone their homes, let alone government assistance, anything like that. So it's tragic that he made this decision.

It is heartening, as a legal representative here in the United States, showing him a system of justice that he made the decision to sit down with the government and assist. But, again, as I said before, I always like to hang on to one nugget of what this man has gone through.

And I can tell you, Judge, we had those meetings in the one side of Pinellas Jail, we've had meetings at Citrus, we've talked on video, things like that, but there was always one moment that captures me, and that is there's an exhale and he says, "Oof. I never thought I would go through this." And it's not the average -- you know, it's, like, oh, this is terrible. It is a gut -- it is a gut hit that I have always

felt with him that he's always expressed. And I think that helps the Court think that this is not going to happen again. His family has been around him throughout this entire process.

So we would ask the Court, given all that, to vary downward. There's a basis for a variance for what he has done at this point, there's a basis for the variance given his impoverished lifestyle. As I said previously, I don't think we can stand before the Court and make an argument for guidelines, I don't think that's appropriate. We don't have that. He did what he did. But he has stood up for what he did and accepted responsibility, and I think that's worthy of a reduction from the guideline levels at this point.

THE COURT: All right. And, Mr. Baeza, I'm going to hear from Mr. Barros-Fince, and then I'll ask for your opinion.

Mr. Barros-Fince, is there anything you would like to say before I impose sentence in this case? It can be whatever it is you think it important that I hear from you.

THE INTERPRETER: Well, before anything, I would like to apologize to Your Honor, the prosecutor, and the United States for what I have done. And it's a situation that we go through in the part of the country that I'm from, in La Guajira, and we're being used by those who are from the interior of the country known as the Cachacos, C-a-c-h-a-c-o-s. And they use us and they do pay us, but they pay us low wages. And look at the situation that we've had to go through, which I

don't want to go through again, that you consider the situation that we're in.

Thank you.

THE COURT: Thank you.

Mr. Baeza.

MR. BAEZA: Your Honor, the United States' recommendation is 210 months, which is one level below the applicable guideline range, consistent with the sentence that was imposed for Mr. Hinojosa-Larrada, taking into consideration his aggravating role as well as cooperation with the government. Credit for time served is a little more complicated than Mr. Diaz-Ramos, and the reason for that -- and there's a lot that I need to address, not quasi-rebuttal to some of the things that were presented, but, first of all, Mr. Barros-Fince, he was arrested September 9th, 2020. By December, along with Mr. Barros-Pulido, they walked out the door of the jail in Santa Marta.

THE COURT: How did that happen?

MR. BAEZA: I would like to know that.

THE COURT: Okay. All right.

MR. BAEZA: Typically, in extradition cases, there is some degree of correspondence about paperwork and formatting, and -- you're missing a page here, or this is -- this isn't stapled properly. But, for whatever reason, without any sufficient advanced warning to the United States, a judge in

```
09:56:14AM  1  this area of Colombia let both of them walk out the door.
09:56:17AM  2          THE COURT:  Okay.  So he was in custody about three
09:56:20AM  3  months, and then he left.
09:56:23AM  4          MR. BAEZA:  That's correct, Your Honor.
09:56:25AM  5          And the initial concession was, well, this was just
09:56:32AM  6  some type of administrative screw-up, some -- you know, it's a
09:56:37AM  7  judge who may not be as familiar and well-versed with the
09:56:43AM  8  laws -- or the treaty with the United States, he just needs to
09:56:47AM  9  go turn himself in.  I think this happened on, like, a Friday
09:56:50AM 10  or a Saturday, and then show up on Monday, come back in -- he
09:56:55AM 11  had already given a post-*Miranda* and everything -- just come
09:56:58AM 12  back and, you know, all is forgiven.  He did not do that.  He
09:57:06AM 13  did not return to custody, which took a lot of resources, it
09:57:14AM 14  took a lot of work to relocate him.
09:57:22AM 15          THE COURT:  What'd he do?  Go home?
09:57:25AM 16          MR. BAEZA:  He did not go home, Your Honor.  He might
09:57:28AM 17  have gone home at one point, but my understanding is he was
09:57:37AM 18  difficult to track down.  This is a very porous border with
09:57:42AM 19  Venezuela, as well.  I don't know if he went to Venezuela or
09:57:45AM 20  not, but it took quite some time for him to be relocated.  And
09:57:49AM 21  I'm just asking for the Court's indulgence to identify when he
09:57:53AM 22  was relocated.
09:57:54AM 23          Yes, March 28th, 2021, was when he was taken back
09:58:01AM 24  into custody.
09:58:04AM 25          That took a lot of work.  That took a lot of work
```

from law enforcement to get him back.  You know, I don't want to go into details as to who law enforcement believes he was with and everything or where he went, but this is a little more complicated.

Once he finally went back into custody, he resumed his cooperative posture, which has been significant to the government.  I'm starting to sound like a broken record now talking about -- you know, there's this case, there's more beyond this case that I think would be more appropriate for a Rule 35.

Going back to his personal history and characteristics, I cannot imagine what it must have been like going through what happened in La Guajira, especially in the early 2000s.

This case is distinguishable, though, for Mr. Diaz-Ramos, who was and remained basically, you know, an errand runner for people like Mr. Barros-Fince.  He became a drug trafficker, and he got very good at it.  He was the guy in La Guajira for a long time.

You know, I joked recently that I've come to know that area and the beaches better than Florida's beaches at this point just because of all the detail of who controls what, where they operate, where they get supplied from and everything.  And he's a large part of that.  And he was prolific for a sustained period of time, for several years, and

1  that should be taken into consideration as well.  It's not just
2  the experience you have, it's how you respond to it, and he
3  responded to it by becoming a very good drug trafficker.
4          THE COURT:  Did he get paid well?
5          MR. BAEZA:  My understanding is that he did get paid
6  well, whether he -- whether he appropriately invested is
7  another question.
8          Mr. Retureta is absolutely right, we do not see
9  flashy sports cars in La Guajira, we don't see the narco
10 mansions that we're accustomed to, the fincas, there's no Pablo
11 Escobar style, you know --
12         Is it Nápoles?
13         MR. RETURETA:  Hmm?
14         MR. BAEZA:  Is it Nápoles?
15         MR. RETURETA:  The farm?
16         MR. BAEZA:  Yeah, the farm.  I don't remember
17 anymore.
18         Okay.  But I was trying to remember the name of
19 Escobar's massive ranch.
20         But it's not like that over there.  But, you know,
21 crime pays, and he was -- he was paid for the amount that he
22 was trafficking, and he trafficked a lot.
23         There is one other thing I would ask, Your Honor.  I
24 describe in the plea agreement, and it's also in the
25 presentence report, a large commercial vessel called the Karar

```
10:01:05AM   1  that was on its way to Spain.  There was a period of time for
10:01:11AM   2  about two hours where it was in the territorial waters in the
10:01:15AM   3  United States.  I ask that the Court find that it was subject
10:01:18AM   4  to U.S. jurisdiction, or I can brief that issue, however the
10:01:22AM   5  Court prefers, because it does have some degree of bearing on
10:01:27AM   6  the Spanish recipients, the organized crime group that was
10:01:32AM   7  receiving the cocaine from the Karar off the --
10:01:35AM   8          THE COURT:  As to this defendant?
10:01:37AM   9          MR. BAEZA:  Yes, Your Honor.
10:01:38AM  10          THE COURT:  Do you have any objections to the fact
10:01:41AM  11  that the -- or the representation that the Karar -- K-a what?
10:01:47AM  12          MR. BAEZA:  K-a-r-r-a-r.
10:01:50AM  13          THE COURT:  K-a-r-r-a-r.
10:01:52AM  14          -- was in the -- it was in the waters making it
10:01:58AM  15  subject to the jurisdiction of the United States?  It was
10:02:00AM  16  actually in the territorial waters, right?
10:02:02AM  17          MR. BAEZA:  It was, Your Honor.
10:02:03AM  18          And actually it is K-a-r-a-r.
10:02:07AM  19          So for a short period of time, they turned off their
10:02:11AM  20  navigation system.  However, the logs that were obtained from
10:02:15AM  21  the Karar, once it was off -- once it was boarded by Spanish
10:02:20AM  22  authorities, showed that it actually did go through an area off
10:02:27AM  23  of Puerto Rico for two hours.
10:02:29AM  24          THE COURT:  Okay.  And you have no objections to
10:02:29AM  25  that?
```

```
10:02:30AM   1              MR. RETURETA:  No objection, Your Honor.
10:02:31AM   2              THE COURT:  Okay.  Based on your representation,
10:02:33AM   3   there being no objections to that, I will note that the
10:02:42AM   4   K-a-r-u-r -- right?
10:02:42AM   5              MR. BAEZA:  A-r.  K-a-r-a-r.
10:02:42AM   6              THE COURT:  All right.
10:02:43AM   7              -- K-a-r-a-r was at one point in the territorial
10:02:46AM   8   waters of the United States.
10:02:47AM   9              MR. BAEZA:  Yes, Your Honor.  Thank you.
10:02:48AM  10              And, again, his cooperation, though, has been -- has
10:02:52AM  11   been thorough, it has been exhaustive.  He has had several
10:02:56AM  12   meetings with law enforcement.  We've even given him the
10:02:59AM  13   benefit of -- when he was at Pinellas, he was actually
10:03:02AM  14   transported to an FBI office for two days.  We went through --
10:03:06AM  15   or I can't remember how many days now, but he went through
10:03:10AM  16   significant amounts of intercepts.  He's identified several
10:03:14AM  17   people in the area; that has been thorough.
10:03:18AM  18              And, again, because of just a matter of timing, I
10:03:21AM  19   think that we're probably going to be here for a Rule 35.  I
10:03:26AM  20   can't predict when that will be.
10:03:29AM  21              THE COURT:  Okay.
10:03:29AM  22              MR. BAEZA:  Thank you.
10:03:30AM  23              THE COURT:  All right.  Mr. Retureta, do you have
10:03:33AM  24   anything else?
10:03:34AM  25              MR. RETURETA:  I don't think so, Your Honor.
```

```
10:03:38AM   1            THE COURT:  All right.
10:03:39AM   2            MR. RETURETA:  Thank you.
10:03:40AM   3            THE COURT:  Then, Mr. Barros-Fince, if you would
10:03:44AM   4   stand.  I'm going to impose sentence.
10:03:48AM   5            On March the 2nd, 2023, you entered a plea of guilty
10:04:04AM   6   to Count One of the superseding indictment.  It was pursuant to
10:04:07AM   7   a plea agreement.  You pled to conspiracy to distribute and
10:04:11AM   8   possess with the intent to distribute 5 kilograms or more of
10:04:15AM   9   cocaine while on board a vessel subject to the jurisdiction of
10:04:19AM  10   the United States.  I accepted that plea and adjudicated you
10:04:23AM  11   guilty.
10:04:23AM  12            We are now here, as you know, for sentencing.  You've
10:04:28AM  13   told me you've read the presentence report, been over it with
10:04:33AM  14   your attorney, and there was no objections to the facts or the
10:04:38AM  15   guidelines.  I will adopt the facts and I'll adopt the
10:04:41AM  16   guidelines that are contained in the Presentence Investigation
10:04:45AM  17   Report.
10:04:45AM  18            Prior to any variance, the total offense level is a
10:04:49AM  19   38, the criminal history category is I, the range of
10:04:51AM  20   imprisonment, 235 to 293 months, five years of supervised
10:04:57AM  21   release, no restitution, 50,000 to 10 million is the fine
10:05:02AM  22   range, and there is a $100 special assessment.
10:05:04AM  23            Mr. Retureta, is there any legal reason why I should
10:05:09AM  24   not proceed with sentencing?
10:05:11AM  25            MR. RETURETA:  No, Your Honor.
```

10:05:12AM 1    THE COURT: All right. And, Mr. Baeza?
10:05:14AM 2    MR. BAEZA: No, Your Honor.
10:05:15AM 3    THE COURT: The Court having asked why judgment
10:05:17AM 4 should not now be pronounced and no cause being shown to the
10:05:21AM 5 contrary, having considered those advisory guidelines, having
10:05:25AM 6 considered everything that was said this morning, having
10:05:29AM 7 considered what you said, your attorney, and obviously the
10:05:33AM 8 attorney for the United States, having considered the 3551 and
10:05:40AM 9 3553 factors, it is the judgment of this Court that you be
10:05:45AM 10 sentenced to a term in the Bureau of Prisons of 210 months.
10:05:48AM 11 That's a variance from the guidelines of one level.
10:05:54AM 12    I'm going to talk about credit time in just a moment.
10:05:58AM 13    Upon release from imprisonment, I'll place you on a
10:06:01AM 14 term of five years of supervised release. You're going to be
10:06:04AM 15 deported. But the purpose of this is if you come back in
10:06:08AM 16 within five years, it could be a violation of this case's
10:06:15AM 17 supervised release. You will not be allowed to come back into
10:06:19AM 18 the United States without the express permission of the
10:06:22AM 19 appropriate governmental authority.
10:06:24AM 20    You'll have to cooperate in the collection of DNA by
10:06:26AM 21 the probation office.
10:06:29AM 22    The mandatory drug testing requirements are
10:06:33AM 23 suspended, however you must submit to random drug testing,
10:06:36AM 24 should it be requested, not to exceed 104 tests per year.
10:06:40AM 25    I'll waive the fine finding there is no information

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 10:06:44AM | 1  | that causes me to believe you have the ability to pay a fine. |
| 10:06:47AM | 2  | There's no forfeiture. |
| 10:06:48AM | 3  | I'll assess a $100 special assessment. |
| 10:06:51AM | 4  | I will adopt and accept the plea agreement. |
| 10:06:55AM | 5  | And I believe you agreed to dismiss Count Two? |
| 10:06:58AM | 6  | MR. BAEZA: Yes, Your Honor. I move to dismiss Count |
| 10:07:01AM | 7  | Two as well as the underlying indictment. |
| 10:07:02AM | 8  | THE COURT: I'll dismiss Count Two of the plea |
| 10:07:05AM | 9  | agreement as to you, and I will also dismiss the underlying |
| 10:07:09AM | 10 | indictment as to you. |
| 10:07:10AM | 11 | The Court having pronounced sentence, does counsel |
| 10:07:14AM | 12 | for the government have any objections to the sentence or the |
| 10:07:17AM | 13 | manner in which it was imposed? |
| 10:07:19AM | 14 | MR. BAEZA: No objection, Your Honor. |
| 10:07:20AM | 15 | THE COURT: Mr. Retureta? |
| 10:07:20AM | 16 | MR. RETURETA: No, Your Honor. |
| 10:07:21AM | 17 | THE COURT: All right. Credit time. He would have |
| 10:07:26AM | 18 | credit from 9/9/2020 to 12/5/2020. |
| 10:07:31AM | 19 | And then credit again from March the 28th, 2021, |
| 10:07:37AM | 20 | Mr. Baeza? |
| 10:07:37AM | 21 | MR. BAEZA: I'm sorry. I just want to consult my |
| 10:07:48AM | 22 | notes. |
| 10:07:50AM | 23 | THE COURT: I could look back at what you said. Of |
| 10:07:55AM | 24 | course I've gotten timed out. |
| 10:08:06AM | 25 | MR. BAEZA: Yes, Your Honor, I concur. |

THE COURT: All right. Okay.

Do you have any requests for a prison recommendation, for anything while he is in prison? Any alcohol treatment, should he qualify for that, or drug treatment, or anything like that, or anything else?

MR. RETURETA: Yes, Your Honor. Definitely alcohol and substance abuse. Presentence report details the level of drug abuse and alcohol abuse that he was living through. We would also ask the Court for recommendation of Coleman, again, given his status and amount of time there, the differing facilities there that can be used, give the BOP a little bit extra leeway to work with, so we would ask for BOP Coleman. And vocational training. Anything available to him at that facility or any other facility.

THE COURT: Okay. I will recommend Coleman as a facility. It's about a hundred miles from here, if that. I'll recommend that. I'll also recommend that you be able to participate in vocational training and I'll also recommend English classes for Spanish speakers, if you wish to participate in that.

To the extent permitted by your plea agreement, you have the right to appeal the sentence that I've just imposed. Any notice of appeal must be filed within 14 days or it's waived. You are entitled to a Court-appointed attorney should you appeal, and I will instruct the clerk to waive the filing

```
10:09:54AM   1  fee.
10:09:55AM   2          So the sentence that I just imposed, I did vary
10:10:01AM   3  downward slightly and imposed a sentence of 210 months.
10:10:08AM   4          All right.  Good luck, sir.  Thank you.
10:10:11AM   5          MR. RETURETA:  Thank you, Your Honor.
10:10:12AM   6          (Whereupon, the Court adjourned at 10:10 a.m.)
10:10:12AM   7                         --oo0oo--
```

## REPORTER'S CERTIFICATE

I, REBECCA M. SABO, a Registered Merit Reporter and Certified Realtime Reporter, certify that the foregoing transcript is a true and correct record of the proceedings given at the time and place hereinbefore mentioned; that the proceedings were reported by me in machine shorthand and thereafter reduced to typewriting using computer-assisted transcription; that after being reduced to typewriting, a certified copy of the transcript will be filed electronically with the Court.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

IN WITNESS WHEREOF, I have set my hand at Tampa, Florida, this 26th day of March, 2025.


/s/ Rebecca M. Sabo

Rebecca M. Sabo, RMR, CRR
Federal Official Court Reporter